UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RACHEL W.,

                              Plaintiff,                    **DECISION AND ORDER**

            v.
                                                            1:19-CV-01270 EAW
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____


## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Rachel W. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 13), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 13) is granted and Plaintiff's motion (Dkt. 10) is denied.

## **BACKGROUND**

Plaintiff protectively filed her application for SSI on September 4, 2012.  (Dkt. 6 at 23, 90, 203).[1]  In her application, Plaintiff alleged disability beginning June 5, 2012.  (*Id.* at 23, 203).  Plaintiff's application was initially denied on November 2, 2012.  (*Id.* at  101).  At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on February 11, 2014, and continuing on July 25, 2014, and September 12, 2014.  (*Id.* at 23).  On November 18, 2014, the ALJ issued an unfavorable decision.  (*Id.* at 20-37).  Plaintiff requested Appeals Council review; her request was denied on February 9, 2016.  (*Id.* at 7-10).  Plaintiff appealed the Commissioner's denial of her application, and on April 17, 2017, another judge in this District issued a Decision and Order remanding the matter for further administrative proceedings.  (*Id*. at 1123-31).

On remand, the Appeals Council issued an order vacating the Commissioner's prior decision and remanding the matter to an ALJ, with instructions to "offer [Plaintiff] the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (*Id*. at 1134).  A further hearing was scheduled for March 8, 2019.  (*Id*. at 1201).  Plaintiff failed to appear for this hearing, but the ALJ took testimony from medical expert Dr. Andrew Brown and from a vocational expert ("VE").  (*Id*. at 1050).  Plaintiff's counsel was also present at the hearing. (*Id*. at 1067-98).

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

On May 22, 2019, the ALJ issued an unfavorable decision.   (*Id.* at 1047-66).
Plaintiff appealed the ALJ's decision directly to this Court.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this
Court is limited to determining whether the SSA's conclusions were supported by
substantial evidence in the record and were based on a correct legal standard." *Talavera
v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.
§ 405(g).   The Act holds that a decision by the Commissioner is "conclusive" if it is
supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more
than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)
(quotation omitted).   It is not the Court's function to "determine *de novo* whether [the
claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation
omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.
1990) (holding that review of the Secretary's decision is not *de novo* and that the
Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he
deferential standard of review for substantial evidence does not apply to the
Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)
(citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden

shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since September 4, 2012, the application date.  (Dkt. 6 at 1052).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease with radiculopathy and degenerative joint disease of the knees. (*Id.*).  The ALJ further found that Plaintiff's medically determinable impairments of a learning disorder, "opiate dependency therapy," moderate bilateral carpal tunnel syndrome, cubital tunnel syndrome, and neuropathy were non-severe.  (*Id*. at 1053).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*).  The ALJ particularly considered the criteria of Listings 1.02 and 1.04 in reaching his conclusion.  (*Id.* at 1053-54).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that she could

rotate her neck occasionally. (*Id.* at 1054). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 1058).

At step five, the ALJ relied on the testimony of the VE to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of document preparer and call out operator. (*Id.* at 1058-59). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 1059).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ failed to properly develop the record, and (2) the ALJ failed to properly consider Plaintiff's learning disorder at steps four and five. (Dkt. 10-1 at 1). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A.   Development of the Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-

854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). "The ALJ's duty to develop the record applies to both *pro se* and represented parties[.]." *Lopez v. Comm'r of Soc. Sec.*, No. 17-CV-1504(KAM), 2018 WL 5634929, at *5 (E.D.N.Y. Oct. 31, 2018). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

An ALJ further is "required to take any action that is ordered by the Appeals Council." *Tracy v. Colvin*, No. 1:15-CV-00980 (MAT), 2017 WL 279556, at *2 (W.D.N.Y. Jan. 23, 2017) (quotation omitted). In this case, as noted above, the Appeals Council instructed the ALJ to take any action necessary to complete the administrative record. (Dkt. 6 at 1134).

Plaintiff argues that the ALJ failed to satisfy his duty to develop the record and/or failed to comply with the Appeals Council's order on remand because (1) he did not obtain a medical opinion regarding potential mental limitations associated with pain, (2) he did not obtain a medical opinion regarding Plaintiff's learning disorder, (3) he did not recontact Plaintiff's treating sources, and (4) he failed to obtain records from Rapha Family Medicine, where Plaintiff began treatment in 2014. The Court considers each of these contentions below.

With respect to the ALJ's failure to obtain a medical opinion regarding potential mental limitations associated with pain, as noted above, at the hearing in 2019, medical

expert Dr. Brown testified regarding Plaintiff's physical impairments and limitations. (Dkt. 6 at 1073-87). On questioning by Plaintiff's counsel, Dr. Brown testified that he had not taken Plaintiff's subjective complaints regarding pain into account in fashioning his opinion, but had instead limited his consideration to "the objective findings of imaging studies or any other objective testing and her physical examinations." (*Id*. at 1080-81). Dr. Brown further testified that to the extent Plaintiff's subjective complaints of pain would interact with "emotional state, depression, et cetera," he would defer to a "behavioral medicine or psychological specialist" as to any associated functional limitations. (*Id*. at 1081).

Plaintiff argues that Dr. Brown's testimony obligated the ALJ to obtain a medical opinion regarding potential limitations associated with Plaintiff's subjective complaints of pain. The Court disagrees. Dr. Brown did not, as Plaintiff seems to suggest, testify that such limitations existed but that he was unable to identify them. Instead, Dr. Brown indicated to the extent Plaintiff had mental impairments that would impact her subjective experience of pain, he was not qualified to opine on what that impact would be. He did not testify that Plaintiff actually had such mental impairments, nor does the record support such a conclusion.[2] To the contrary, in her application, Plaintiff did not mention any such mental conditions (Dkt. 6 at 207), nor does the record indicate that she was ever diagnosed with or treated for such a condition. Further, at the hearing in 2014, the ALJ asked Plaintiff if she had ever had "any problem with depression or anxiety or anything" and Plaintiff

---

[2]     As discussed further below, there is some limited evidence that Plaintiff had a mild learning disorder as a child. However, there is nothing in the record to suggest that this mild childhood learning disorder was relevant to Plaintiff's subjective pain complaints.

replied "no, never." (*Id.* at 58). Plaintiff has cited no authority for the proposition that an ALJ is required to obtain a medical opinion from a psychiatric expert where a claimant experiences pain from her physical impairments, but does not suffer from a mental impairment. "The ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014) (finding ALJ was not required to obtain consultative psychiatric examination where "Plaintiff's alleged treatment for ADD was only cited once in a treatment note dated June 14, 2006," and there was "no evidence in the record to suggest that Plaintiff received any treatment for ADD during the remaining relevant application period"). Here, the ALJ performed a thorough analysis of Plaintiff's subjective complaints in his decision (*see* Dkt. 6 at 1057), and Dr. Brown's testimony did not create an ambiguity or conflict that required the ALJ to obtain an opinion from a psychiatric expert.

The ALJ was also not required to obtain a medical opinion regarding Plaintiff's learning disorder. As the ALJ explained, in 1989, at the age of seven, Plaintiff underwent IQ testing, resulting in a score of 74. (Dkt. 6 at 278, 1053). There is no dispute that this IQ result was not evidence of Plaintiff's functioning during the relevant time period. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00 (providing that "IQ test results obtained between ages 7 and 16 should be considered current for . . . 2 years when the IQ is 40 or above"). Further, as the ALJ explained, Plaintiff had worked in the past as a bartender, sales associate, and childcare provider, she made no mention of any mental difficulties in

her application, and no cognitive deficits had been observed by any of her treatment providers.  (Dkt. 6 at 1053).  Plaintiff testified that she graduated from high school (*id*. at 54) and she consistently had normal mental status examinations.  (Dkt. 6-1 at 54-56, 59, 178).  On these facts, the ALJ was under no obligation to obtain additional intellectual testing or other medical opinion before concluding that Plaintiff's learning disorder was non-severe.  *See Mercado v. Berryhill*, No. 1:15-CV-00282-MAT, 2017 WL 6275726, at *7 (W.D.N.Y. Dec. 11, 2017)  (finding no error in ALJ's failure to order additional intelligence testing where the plaintiff's low childhood IQ score was "from 2003, a decade before the ALJ's hearing," and the plaintiff had "worked at jobs, roofing and supermarket stocking, that require performing repetitive two and three step tasks, only stopped because of physical problems, and did not mention his mental limitations in his disability application documents"  (quotation and alteration omitted)).

The Court further finds that the ALJ did not err in failing to recontact Plaintiff's treatment providers.  As Plaintiff acknowledges, the treatment providers in question issued opinions that simply stated that Plaintiff was temporarily either partially or totally disabled.  (*See* Dkt. 10-1 at 25).  The ALJ gave these opinions little weight, explaining that they addressed an issue reserved to the Commissioner and were "inconsistent with the overall record, including [Plaintiff's] often noted lack of distress, often noted normal gait and muscle strength by treating orthopedic providers before and after surgery, improvement with physical therapy, . . . often noted normal range of motion and strength in the upper extremities, the extent of [Plaintiff's] daily activities, and the opinion[s] of [consultative examiner] Dr. [Donna] Miller and Dr. Brown."  (Dkt. 6 at 1058).  Plaintiff argues that it

was "improper for the ALJ to reject the opinions without seeking any clarification as to the functional limitations upon which the opinions were based." (Dkt. 10-1 at 25). However, "[t]he duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings. . . . Where the record before the ALJ is complete enough to form a determination as to plaintiff's disability, the ALJ is not required to recontact a medical source." *Raftis v. Comm'r of Soc. Sec.*, No. 5:17-CV-0514 (WBC), 2018 WL 1738745, at *6 (N.D.N.Y. Apr. 6, 2018) (citing *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017)). Here, the record contained sufficient evidence, including opinions from Dr. Brown and Dr. Miller, to allow Plaintiff to assess Plaintiff's RFC, and the ALJ was not obligated to recontact Plaintiff's treatment providers.

Finally, the ALJ did not err in failing to obtain medical records from Rapha Family Medicine ("RFM"). On February 15, 2019, Plaintiff's counsel sent a letter to the ALJ indicating that they had requested additional medical records from both RFM and Dr. Paul Updike of Pathways. (Dkt. 6 at 1259). At the hearing on March 8, 2019, counsel indicated that they were waiting for confirmation from RFM on "dates of treatment or if [Plaintiff has] been receiving treatment." (*Id*. at 1071). The ALJ advised counsel that if any relevant records from RFM were obtained, he would provide those records to Dr. Brown and "see if [Dr. Brown] changes his opinion after that." (*Id*.). Counsel replied "Okay. That is not a problem." (*Id*.). Counsel subsequently provided the ALJ with medical records from Dr. Updike, but did not submit any records from RFM. At no point did counsel request assistance from the ALJ in obtaining such records.

"Generally, the ALJ's duty to develop the record is satisfied where, as here, the ALJ keeps the record open to receive further evidence after the administrative hearing but the plaintiff fails to provide such evidence nor requests the ALJ's assistance in obtaining the records." *Elizabeth S. v. Comm'r of Soc. Sec.*, No. 19-CV-06440, 2021 WL 1054371, at *5 (W.D.N.Y. Mar. 19, 2021).   Plaintiff has pointed to no facts that would make this general rule inapplicable here, and in particular does not provide any evidence that the claimed missing records from RFM even actually exist. *See Carlin v. Comm'r of Soc. Sec.*, No. 1:19-CV-551-DB, 2020 WL 6291413, at *14 (W.D.N.Y. Oct. 27, 2020) (rejecting argument that ALJ failed to develop the record where "Plaintiff has not shown that additional records actually exist").   Moreover, while Plaintiff notes that there are limited medical records from after 2014, she points to no evidence that her physical condition significantly changed in that time period so as to render the medical opinions of record incomplete or stale. *See Meiers v. Comm'r of Soc. Sec.*, No. 19-CV-71, 2020 WL 3972316, at *2 (W.D.N.Y. July 14, 2020) ("[T]ime alone does not make an opinion stale: For a medical opinion to be stale, there must be a significant period of time between the date of the opinion and the hearing date, and there also must be subsequent treatment notes indicating that the claimant's condition deteriorated over that period." (quotation and alteration omitted)).   Under these circumstances, the Court does not find that the ALJ erred in failing to obtain records from RFM.

- 12 -

B.      **Consideration of Plaintiff's Learning Disability**

Plaintiff's second and final argument is that the ALJ failed to appropriately consider her learning disability at steps four and five of the sequential analysis.  The Court is not persuaded by this contention, for the reasons that follow.

As noted above, the ALJ appropriately concluded at step two that Plaintiff's learning disability was non-severe.  It is true that an ALJ is required to consider functional limitations associated with both severe and non-severe impairments in assessing a claimant's RFC and continuing through the sequential evaluation.  *See Snedeker v. Colvin*, No. 3:13-CV-970 GLS/ESH, 2015 WL 1126598, at *7 (N.D.N.Y. Mar. 12, 2015) ("All impairments, *i.e.*, both severe and non-severe, must be factored into a residual functional capacity determination that precedes sequential Step 4.").  However, not all non-severe impairments cause functional limitations—indeed, not even all *severe* impairments do so. *See  Quimby v. Comm'r of Soc. Sec.*, No. CIV. A. 1:09-CV-20, 2010 WL 2425904, at *16 (D. Vt. Apr. 13, 2010) ("[T]he fact that an ALJ makes a 'severity' finding with respect to a particular impairment at step two does not necessarily mean that such impairment imposes functional limitations on the claimant which must be incorporated into the claimant's RFC."), *adopted*, 2010 WL 2425903 (D. Vt. June 8, 2010).  In this case, as set forth above, the ALJ explained that there was no evidence to support the conclusion that Plaintiff's learning disorder resulted in any cognitive deficits, and Plaintiff has failed to identify any functional limitations that she claims arise from her learning disability.

In any event, the VE testified that both of the representative occupations she identified could be performed by somebody who "could do simple, repetitive, one and two-

step tasks." (Dkt. 6 at 1089). Accordingly, even assuming *arguendo* that the ALJ should have incorporated additional limitations into Plaintiff's RFC based on her mild childhood learning disorder, any failure in this regard was harmless and does not constitute a basis for remand.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 25, 2021
       Rochester, New York